### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **SHARK TECH LLC d/b/a METAL SHARK ALABAMA,** | ) ) ) |
| Plaintiff/Counter Defendant, | ) ) |
| vs. | ) ) CIV. ACT. NO. 1:21-cv-279-TFM-MU |
| **DEAN GAGNON**, *et al.*, | ) ) ) |
| Defendants/Counter Claimants. | ) |

### MEMORANDUM OPINION & ORDER

Pending before the Court are the parties' respective motions for attorney's fees (Docs. 135, 144, 141). The parties filed their respective responses and replies. Docs. 147, 148, 149, 150. Having considered the motions, the evidence in support of the motions, and the relevant law, the Court finds that *Metal Shark's Amended Motion for Attorneys' Fees* (Doc. 141) is due to be **GRANTED** and the *Motion for Recovery of Attorneys' Fees and Costs on Behalf of Dean Gagnon and Mystic Yacht Adventures, LLC* (Doc. 135, as amended by Doc. 144) is due to be **DENIED**.

### I.  PROCEDURAL BACKGROUND

On April 11, 2023, the Court held a telephone conference in this matter during which it gave the parties the verdict and oral findings of fact after holding a 14-day bench trial. During the telephone conference, the parties requested a hearing on whether either party is entitled to attorney's fees. In lieu of a hearing, the Court directed the parties to file motions on the issue of attorney's fees. Doc. 132. On June 21, 2023, the Court issued its Memorandum Opinion and Order memorializing its oral rulings. Doc. 136.

The parties filed their initial respective motions for attorney's fees on June 16, 2023. *See* Docs. 134, 135. Because the motions were deficient, namely in that they failed to include a

detailed billing and accounting as to the fees they were claiming, the Court ordered the parties to submit amended motions addressing the deficiencies. *See* Doc. 138. On June 20, 2023, the parties submitted their respective amended motions. Docs. 141, 144. The parties timely filed their respective responses and replies. Docs. 147, 148, 149, 150. The motions are ripe for review and the Court finds oral argument is not necessary.

## II.   DISCUSSION AND ANALYSIS

### A.   Shark Tech's Motion for Attorney's Fees

Shark Tech requests attorney's fees in the amount of $19,436 for its counsel. Specifically, Shark Tech seeks $14,400 for counsel Clay Rankin and $5,036.15 for counsel Jaime Betbeze. Mr. Rankin and Mr. Betbeze billed their hours at a rate of $250 per hour. *See* Doc. 142. Shark Tech does not specify in its motion exactly how many hours were spent on the matter that relate to its prevailing claim. While Mr. Betbeze provided the Court with the several pages of billing records on which he has highlighted the relevant time entries, Mr. Rankin's provided billing records do not distinguish between time spent on the claim compared to time spent on the counterclaim. However, dividing the requested amounts by counsels' hourly rates, Mr. Rankin expended approximately 57.6 hours on the matter and Mr. Betbeze expended approximately 20.1 hours on the matter.

"Attorneys' fees generally are not recoverable in admiralty unless (1) they are provided for by the statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or (3) there is a contract providing for the indemnification of attorneys' fees." *Natco, Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001) (citing *Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 730-31 (5th Cir. 1980)).

Here, the Work Order signed by Dean Gagnon provided: "In the event that it is necessary to pursue collection of any charges for the work hereunder, Customer and the vessel . . . shall be liable to Metal Shark for all reasonable costs and expenses, including attorney's fees . . .." Doc. 141-1. Thus, there is a contract that provides for the indemnification of attorney's fees. This Court already found that the Work Order was valid and enforceable, and that Shark Tech prevailed on its claim for unpaid invoices pursuant to the Work Order. Therefore, Shark Tech may recover attorney's fees for those fees related to its claim under the Work Order.

The Gagnons oppose Shark Tech's motion for attorney's fees, stating that Shark Tech failed to carry its burden of proof because it did not provide the Court with time/billing records supporting the fee requested. However, as evidenced by Document 142 on the docket sheet, Shark Tech did provide the Court with time and billing records. Therefore, the argument fails. The Court thus turns to whether the fee requested is reasonable.

"[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Watford v. Heckler*, 765 F.2d 1562, 1568 (11th Cir. 1985) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The first step in calculating a reasonable attorney's fee award is to determine the 'lodestar'—the product of multiplying reasonable hours expended times a reasonable hourly rate." *Martinez v. Hernando Cnty. Sheriff's Office*, 579 F. App'x 710, 713 (11th Cir. 2014) (citing *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)); *see also Bivins v. Wrap It Up, Inc.,* 548 F.3d 1348, 1350 (11th Cir. 2008) ("The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve.").

"In determining what is a 'reasonable' hourly rate and what number of compensable hours

is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)[1]." *Id.* "The *Johnson* factors include: (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Faught v. Am. Home Shield Corp.,* 668 F.3d 1233, 1242-43 (11th Cir. 2011) (citations omitted). And, after determination of the lodestar, that "number" may then be "adjusted after considering other factors, such as the results obtained." *Martinez,* 579 F. App'x at 713 (citations omitted). Although the "*Johnson* factors are to be considered in determining the lodestar figure; they should not be reconsidered in making either an upward or downward adjustment to the lodestar-doing so amounts to double-counting." *Bivins*, 548 F.3d at 1352 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562-63 (1992)).

In determining the proper lodestar in this case, the undersigned first considers how many hours were reasonably expended in pursuing this matter then what hourly rates are reasonable. In so doing, the Court keeps in mind that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley,* 461 U.S. at 437.

---

[1] The Eleventh Circuit has adopted as binding precedent the decisions of the Fifth Circuit that were decided prior to September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

1. **Hours Reasonably Expended**

"'Fee applicants must exercise what the Supreme Court has termed 'billing judgment,' which requires the exclusion of excessive, redundant, or otherwise unnecessary hours." *Smith v. Werner Enters., Inc.*, Civ. Act. No. 14-0107-WS-B, 2015 U.S. Dist. LEXIS 153536, at *12, 2015 WL 7185503, at *4 (S.D. Ala. Nov. 13, 2015) (citations and internal quotation marks omitted). Indeed, "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" *Barnes,* 168 F.3d at 428. "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id.* "Excluding excessive or otherwise unnecessary hours under the rubric of 'billing judgment' means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis." *Norman v. Hous. Auth. of the City of Montgomery,* 836 F.2d 1292, 1301 (11th Cir. 1988). "Moreover, because an assessment of the reasonableness of the hours requested (at least when objection is adequately raised by the defendant) contemplate[s] a task-by-task examination of the hours billed, plaintiffs' counsel is required to record each task, and the time associated with each, with sufficient clarity that the Court can evaluate the reasonableness of the expenditure of time." *Smith*, 2015 U.S. Dist. LEXIS 153536, at *12, 2015 WL 7185503*,* at *4 (citations and internal quotation marks omitted).

As previously noted, a simple math calculation indicates that Mr. Rankin expended approximately 57.6 hours on the matter and Mr. Betbeze expended approximately 20.1 hours on the matter. Upon review of the billing records submitted by Mr. Rankin and Mr. Betbeze, the

Court finds that their requests to be awarded fees for approximately 57.6 hours and 20.1 hours, respectively, are incredibly reasonable. The Court also sat through the full bench trial and in its experience reaches that conclusion based upon the relevant time entries and what the Court witnessed at trial.

### 2. Reasonable Hourly Rates

> "The Eleventh Circuit has instructed that a reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation.'" *McDonald* [*v. ST Aerospace Mobile, Inc.,* Civ. Act. No. 12-0313-CG-C], 2013 WL 1389976, [at] *3 [(S.D. Ala. April 4, 2013)] (citing *Norman,* 836 F.2d at 1303). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" [ ]*Barnes,* 168 F.3d [ ] at 437 (citing *Cullens v. Ga. Dep't of Transp.,* 29 F.3d 1489, 1494 (11th Cir. 1994)[)]. However, "[i]f the fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing to handle his claims." *Barnes*, 168 F.3d at 437. The fee applicant "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman,* 836 F.2d at 1299. "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman,* 836 F.2d at 1299.

*Cormier v. ACAC Inc.*, Civ. Act. No. 13-0158-CG-M, 2013 U.S. Dist. LEXIS 173659, at * 2, 2013 WL 6499703, at *2 (S.D. Ala. Dec. 11, 2013). "Also, the court is familiar with the prevailing rates in this district and may rely upon its own 'knowledge and experience' to form an 'independent judgment' as to a reasonable hourly rate." *Garrett Invs., LLC v. SE Prop. Holdings, LLC*, 956 F. Supp. 2d 1330, 1339 (S.D. Ala. 2013) (citing *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). However, "a court should hesitate to give controlling weight to prior awards, even though they may be relevant." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000).

Shark Tech requests an hourly rate of $250 for both Mr. Rankin and Mr. Betbeze. Doc. 141 at 2.

In support of their claimed hourly rate, Mr. Rankin and Mr. Betbeze submitted the affidavit

of Marion E. Wynne, Jr.  Doc. 141-2.  Mr. Wynne states he has practiced law since 1968; he is admitted to practice in the State of Alabama; and his practice has been in municipal law, commercial litigation, business disputes, debtor-creditor cases, and probate of estates, as well as other areas.  *Id.*  Additionally, he has served as president of the Baldwin County Bar Association and a Bar Commissioner; was the former Fairhope City Judge; and the former Fairhope City Attorney and Prosecutor.  *Id.*  Mr. Wynne states it is his opinion that the hourly rate of $250 for both Mr. Rankin and Mr. Betbeze is "extremely reasonable" given their reputations and skill level. *Id.*

The attorneys did not include their biographies, resumes, or curriculum vitae when submitting their request for attorneys' fees.  However, based upon the information publicly available on the Alabama State Bar website, both attorneys have over twenty years' experience.  Mr. Rankin was admitted to practice on April 4, 1967 and Mr. Betbeze was admitted on September 26, 1997.  The Court is also aware that both have significant litigation experience given they regularly practice in the Southern District of Alabama.[2]

Mr. Rankin's and Mr. Betbeze's claimed hourly rates are similar to the prevailing rates in the local market of Mobile, Alabama, that are charged by attorneys with similar experience and skill – and in fact are generally lower than some other submissions of similar experience and skill. *See Lambert v. Herrington*, Civ. Act. No. 19-00854-KD-B, 2023 U.S. Dist. LEXIS 143178, at *21, 2023 WL 5278857 (S.D. Ala. Aug. 16, 2023) (finding that the requested hourly rate of $250 for an attorney in the Mobile area was reasonable); *Smith v. Cmty. Loans of Am., Inc.*, Civ. Act. No. 12-00187-KD-B, 2013 U.S. Dist. LEXIS 12198, 2013 WL 372113, at *7 (S.D. Ala. Jan. 30, 2013)

---

[2] The Court will advise counsel that in the future, they should submit some kind of biographical data for consideration on the record.  However, in this case, the undersigned is not required to disregard his familiarity with the practice of these attorneys.

(awarding $250/hour for an attorney with 15 years of experience); *McCants v. Fred's of Tenn., Inc.*, Civ. Act. No. 11-00653-KD-M, 2013 U.S. Dist. LEXIS 6734, 2013 WL 172900, at *4 (S.D. Ala. Jan. 16, 2013) (awarding $250/hour for an attorney with 11 years of experience in employment litigation); *Higdon v. Critter Control of the Gulf Coast, LLC*, Civ. Act. No. 11-0714-KD-N, 2013 U.S. Dist. LEXIS 25120, 2013 WL 673462, at *5 (S.D. Ala. Feb. 25, 2013) (awarding $250/hour to counsel who had been practicing since 1989); *Goldsby v. Renosol Seating, LLC*, Civ. Act. No. 2:08-0148-KD-N, 2013 U.S. Dist. LEXIS 174668, 2013 WL 6535253, at *9 (S.D. Ala. Dec. 13, 2013) (finding $250-$300/hour reasonable "for more experienced and qualified attorneys"); *Decorative Components Incorporated, Inc. v. ICON Computing Solutions, Inc.*, Civ. Act. No. 1:12-00007-KD-C, 2012 U.S. Dist. LEXIS 157450, 2012 WL 5398800, at *5-6 (S.D. Ala. Nov. 2, 2012) (recognizing that $250-$350/hour was reasonable for "top Mobile lawyers in complex cases" and $250/hour "for an attorney with 15 years of experience as a law firm partner.").

With all the above in mind and in consideration of the *Johnson* factors, the Court finds an hourly rate of $250 to be reasonable for Mr. Rankin and Mr. Betbeze.

3. **Lodestar Calculation**

|  | **Hourly Rate** | **Hours** | **Amount** |
|---|---|---|---|
| Mr. Rankin | $250.00 | 57.6 | $14,400.00 |
| Mr. Betbeze | $250.00 | 20.1 | $5,036.15 |
| **Total** |  |  | **$19,436.15.** |

Based upon the approved rates and hours, the Court finds the lodestar is $19,436.15.

4. **Adjustments to the Lodestar**

While the Supreme Court has made clear that "[t]he product of reasonable hours times a reasonable rate does not end the inquiry[,]" *Hensley,* 461 U.S. at 434, this Court does bear in mind

that "there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins,* 548 F.3d at 1350 (citations and quotations omitted). "When the number of compensable hours and the hourly rate are reasonable, a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts." *Id.* at 1350-51 (citation omitted). Here, Plaintiff prevailed on its contract claim and was awarded the damages it sought to recover in unpaid invoices. While Plaintiff was still found liable to Defendants on some of the Defendants' counterclaims, the time spent on the counterclaims is not accounted for in the requested attorney's fees. Therefore, a downward adjustment to the lodestar is not warranted or appropriate.

5. **Conclusion**

Based upon the foregoing analysis, the Court grants the request for attorneys' fees for Mr. Rankin and Mr. Betbeze in the amount of $19,436.15.

**B.     Dean Gagnon and Mystic Yacht Adventures' Motion for Attorney's Fees**

Mr. Gagnon and Mystic Yacht Adventures (the "Gagnons") request attorney's fees in the amount of $242,794.50 for counsel Wilton Bland and $56,686.05 for counsel Donald Radcliff. The amounts requested reflect an hourly rate of $255 per hour for Mr. Bland, which he later reduced to $225 per hour as a courtesy to the Gagnons, and $250 per hour for Mr. Radcliff.

As previously noted, "[a]ttorneys' fees generally are not recoverable in admiralty unless (1) they are provided for by the statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or (3) there is a contract providing for the indemnification of attorneys' fees." *Natco, Ltd. P'ship*, 267 F.3d at 1193 (citing *Noritake Co.*, 627 F.2d at 730-31.

The Gagnon's argue that they are entitled to attorney's fees because Shark Tech breached its warranty of workmanlike performance and is therefore liable for all foreseeable consequential damages. Doc. 144 at 5. They rely on a Fifth Circuit case from 1982 to support their argument

that attorney's fees are recoverable in a prevailing claim for breach of warranty of workmanlike performance. *See Todd Shipyard Corp. v. Turbin Serv., Inc.*, 674 F.2d 401 (5th Cir. 1982).[3]

The Gagnons also rely on the Eleventh Circuit case *Edward Leasing Corp. v. Uhilg & Assocs., Inc.*, 785 F.2d 877 (11th Cir. 1986) for the proposition that attorney's fees and costs are recoverable when a shipyard is party to a maritime contract and breaches its warranty of workmanlike performance. However, *Edward Leasing* was decided in 1986 and, while the court specifically relied on *Todd Shipyards* in awarding attorney's fees for a breach of the warranty of workmanlike performance, the issue of attorney's fees was not challenged on appeal and therefore was not before the court. Rather, a thorough reading of the opinion shows that the **only** mention of attorney's fees was when the court cites to the trial court's findings of fact and conclusions of law, and the Eleventh Circuit did not consider the merits of the attorney's fees claim. *See Edward Leasing Corp.*, 785 F.2d at 884.

However, two years later, a case out of this court (Southern District of Alabama) more appropriately summarized the status of the law on the recovery of attorney's fees for breach of the warranty of workmanlike performance:

> The seminal binding case regarding the recoverability of attorney's fees in an action involving the warranty of workmanlike performance is *Strachan Shipping Co. v. Koninklyke Nederlandsche Stoomboot Maalschappy, N.V.*, 324 F.2d 746 (5th Cir. 1963), *cert. denied*, 376 U.S. 954, 11 L. Ed. 2d 972, 84 S. Ct. 969 (1964). In "a case of first impression," *id.* at 746, the court permitted a defendant and third party plaintiff shipowner to recover as indemnity from the third party defendant stevedore, as items of damages, its attorney's fees and expenses incurred in defending against the plaintiff longshoreman's claim. *Id.* at 746-47.

---

[3] The year is relevant because the Eleventh Circuit has held that cases by the former Fifth Circuit decided before October 1, 1981 are binding precedent on the Eleventh Circuit, unless and until they are overruled by the U.S. Supreme Court or the Eleventh Circuit sitting en banc. *See Bonner v. Pritchard*, 661 F.2d 1206 (11th Cir. 1981). While the Gagnons harp on this, *Todd Shipyards* was decided in 1982 and therefore is not binding on this Court.

The *Strachan* court did not extend the right to indemnity to encompass a right to attorney's fees incurred in prosecuting its claim against the breaching party; on the contrary, the court expressly noted that "the conclusion here reached is limited to the facts of this case." *Id.* at 747.

The Court has read every Fifth Circuit and Eleventh Circuit case citing to *Strachan* (approximately twenty cases) and has found none save *Todd Shipyards* purporting to extend the scope of *Strachan* as plaintiff seeks to do here. Nor have the parties cited the Court to any case in any way suggesting that *Todd Shipyards* merely restated pre-existing law. Consequently, no binding precedent compels the Court to allow plaintiff's claim for attorney's fees. Plaintiff must therefore convince the Court that *Todd Shipyards* represents a reasonable, methodical extrapolation from common precedent in order to persuade the Court that *Todd Shipyards'* tack should be followed [. . .].

For several reasons the Court concludes that the Eleventh Circuit would not, and hence this Court should not, follow *Todd Shipyards*. First, as noted above, no binding case has come to light even suggesting the Eleventh Circuit would expand on *Strachan*.

Second, binding precedent expressly holds that "such recoverable attorneys' fees and expenses [for breach of the warranty of workmanlike performance] are limited to those incurred in defense of the injured party's claim for damages, and do not include those for prosecuting the shipowner's claim for indemnity, either in the trial court or on appeal." *Lusich v. Bloomfield Steamship Co.*, 355 F.2d 770, 776 (5th Cir. 1966). It would hardly be consistent to disallow attorney's fees for bringing in the indemnitor as a third party defendant yet to allow them should the indemnitee bring an original action naming the indemnitor as defendant.

Third, the binding case of *Noritake, Inc. v. M/V HELLENIC CHAMPION*, 627 F.2d 724 (5th Cir. 1980), classified the indemnitor-indemnitee exception to the general admiralty rule against awarding attorney's fees as a recovery of "the reasonable expenses incurred in defending against the claim" of the injured party. *Id.* at 730 n.5. The Court cited four cases in support of its description of the exception, two of which were warranty of workmanlike performance cases.

Fourth, *Todd Shipyards* announced this dramatic shift in the law with no discussion and with no apparent awareness that it was altering longstanding law. The Court simply quoted from *McCawley v. Ozeanosun Compania, Maritime, S.A.*, 505 F.2d 26, 32 (5th Cir. 1974), with an additional citation to *Thibodeaux v. Texas Eastern Transmission Corp.*, 548 F.2d 581, 587 (5th Cir. 1977).

It is true that both these cases stated simply that "foreseeable damages recoverable for breach of warranty of workmanlike performance include reasonable attorneys' fees," as the *Todd Shipyards* court quoted. Both cases, however, also cited to the seminal decision of *Strachan*, and both cases by their facts implicated only recovery

> for the expenses of defending a claim. Other binding cases clearly set forth the limitation of the rule. *E.g.*, *Brock v. Coral Drilling, Inc.*, 477 F.2d 211, 217 (5th Cir. 1973) (because Coral breached its warranty of workmanlike performance, "Shell is entitled to indemnity from Coral for any costs or attorneys' fees incurred by Shell in defending the claims brought against it by Baroid.").
>
> Fifth, the Fifth Circuit has not unequivocally accepted *Todd Shipyards* as the law of the circuit. After *Todd Shipyards* was handed down, the Fifth Circuit expressly acknowledged the continuing currency of Noritake's limitation of the Strachan rule to the expenses of defense. *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 695 F.2d 893, 906 n.19 (5th Cir.), *cert. denied*, 464 U.S. 818, 78 L. Ed. 2d 89, 104 S. Ct. 77 (1983).
>
> Sixth, the three located Fifth Circuit cases referring to the relevant portion of *Todd Shipyards* fail to correct that case's deficiencies by offering support for the result reached therein or explaining the reasoning underlying the decision. A challenge to the attorney's fees award in *Todd Shipyards* was denied on second appeal because the law of the case doctrine virtually foreclosed reconsideration. *Todd Shipyards Corp. v. Auto Transportation, S.A.*, 763 F.2d 745, 752 (5th Cir. 1985). In *Delta Steamship Lines, Inc. v. Avondale Shipyards, Inc.*, 747 F.2d 995, 1011 (5th Cir. 1984), the court acknowledged that the plaintiff vessel owner relied on *Todd Shipyards* in seeking its attorney's fees, but the court denied the attorney's fees request for reasons wholly unrelated to the *Todd Shipyards* decision. Finally, the court in *Coastal Ironworks, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 583 (5th Cir. 1986), employed *Todd Shipyards* without elaboration.

*Dana Marine Serv., Inc. v. Int'l Ship Repair & Marine Servs., Inc.*, 687 F. Supp. 565, 565-67 (S.D. Ala. 1988). There is no reason to rehash the extremely extensive and thorough analysis above regarding the availability of attorney's fees for a party prevailing on a breach of the warranty of workmanlike performance claim. The Court also agrees with it and need not re-write what has already been written well. Another case in this Circuit also came to the same conclusion:

> Attorney's fees generally are not recoverable in admiralty. *See Cantieri Navali Riuniti v. M/V Skyptron*, 802 F.2d 160 (5th Cir. 1986). It is true that under a breach of a warranty of workmanlike performance claim, a shipowner may recover, as part of an indemnification claim, attorney's fees incurred in defending a claim by a third party. *See Strachan Shipping Co. v. Koninklyke Nederlandsche S.M.*, 324 F.2d 746 (5th Cir. 1963), *cert. denied* 376 U.S. 954, 969 (1964). "This indemnity rule [does] not extend, however, to recovery of fees for litigation against the party in breach to actually determine liability [and damages]." *Nathaniel Shipping, Inc., v. General Elec. Co.*, 920 F.2d 1256, 1268 (1991) (concluding that *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401 (5th Cir.), *cert. denied* 459 U.S. 1036 (1982),

> mistakenly changed specific rule of indemnification into general rule and following more narrow formulation of the rule); *see also Dana Marine Serv., Inc., v. International Ship Repair & Marine Serv., Inc.*, 687 F. Supp. 565, 566 (S.D. Ala. 1988) (same); *see generally* David W. Robertson, *Court-Awarded Attorney's Fees in Maritime Cases: The "American Rule" in Admiralty*, 27 J. MAR. L. COM. 507, 580 n. 186 (1996) (stating that *Todd Shipyards, Corp.* mistakenly interpreted *Strachan* and other cases as supporting broad proposition that any breach of a contractual warranty of workmanlike performance yields an attorney's fee award).

*In re Palmer Johnson Savannah, Inc.*, 1 F. Supp. 2d 1386, 1390 (S.D. Ga. 1997). Therefore, the Court finds that under the correct application of the law, attorney's fees are not available.

The Gagnons also argue that Shark Tech was implicitly found liable for wanton negligence. *See id.* at 6-7. However, even the Gagnons note that the Memorandum Opinion is silent as to a finding of wanton negligence. While the Gagnons argue it is implied, the Court notes here that that silence was not unintentional or inadvertent. Rather, there is no mention of a finding of wanton negligence in the Memorandum Opinion <u>because</u> there was no finding of wanton negligence. As there was no finding of wanton negligence, any claim for attorney's fees pursuant to "the nonprevailing party act[ing] in bad faith" fails.

Accordingly, the Gagnons' motion for attorney's fees (Doc. 135, as modified by Doc. 144) is **DENIED**.

### III.    MOTIONS TO SEAL

In addition to their motions for attorneys' fees, both parties filed motions to seal the billing records that they submitted in support of their motions (Docs. 139, 143). The Local Rules require a party who seeks a sealing order to file an unsealed written motion that contains "[a] generic, non-confidential identification of the document to be sealed," "[t]he basis upon which the party seeks the order, including the reasons why alternatives to sealing are inadequate," and "[t]he duration for which sealing is requested." S.D. Ala. GenLR 5.2(2)(A)-(C). The moving party must also attach to their motion "a proposed unsealed order granting the motion and setting forth the basis

for the Court's action" and "file, *in camera and under seal*, the document proposed to be sealed." S.D. Ala. GenLR 5.2(2).  However, in addition to that requirement, the Court must also consider public access to courts.

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 1312, 55 L. Ed. 2d 570 (1978).  Further, "[t]he operations of courts and the judicial conduct of judges are matters of utmost public concern." *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839, 98 S. Ct. 1535, 1541, 56 L. Ed. 2d 1 (1978)).  "The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process.  *Romero v. Drummond Co.,* 480 F.3d 1234, 1245 (11th Cir. 2007) (quoting *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)).  The Eleventh Circuit recently reaffirmed the need for "resolute" enforcement of the presumption that the public should have access to judicial records.  *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1359 (11th Cir. 2021).  "What happens in the halls of government is presumptively public business. Judges deliberate in private, but issue public decisions after public arguments based on public records." *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).  The common-law right of access favors access to judicial records and includes "the right to inspect and copy public records and documents." *Chicago Tribune*, 263 F.3d at 1311.  However, the right is not absolute. *Id*.  It does not apply to discovery, and where it does apply, it may be overcome by a showing of good cause.  *Romero*, 480 F.3d at 1245.

"[M]aterial filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution

of the merits is subject to the common-law right." *Chicago Tribune*, 263 F.3d at 1311-12; *see also Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1166 (11th Cir. 2019) (quoting *FTC v. AbbVie Prods., LLC*, 713 F.3d 54, 62 (11th Cir. 2013)) ("The common law right of access to judicial records establishes a general presumption that criminal and civil actions should be conducted publicly and includes the right to inspect and copy public records and documents. It is an essential component of our system of justice' and 'is instrumental in securing the integrity of the process.") (internal quotations and modifications omitted). "[T]he need for public access to discovery is low because discovery is 'essentially a private process . . . the sole purpose of which is to assist trial preparation.'" *Romero*, 480 F.3d at 1245 (quoting *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986)). In short, the distinction lies in the comparison of "material filed with discovery motions and material filed in connection with more substantive motions." *Chicago Tribune*, 263 F.3d at 1312. By way of an example, attachments to a motion to compel are not subject to the common-law right, whereas attachments to pretrial motions which require judicial resolution on the merits are subject to the common-law right. In the latter category, one may only overcome the common-law right by a showing of good cause. *Romero*, 480 F.3d at 1246. This standard parallels the "good cause" standing of Federal Rule of Civil Procedure 26(c) governing protective orders. The good cause "standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential." *Chicago Tribune*, 263 F.3d at 1313. When considering that balancing test, the *Romero* Court stated as follows:

> In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the

>information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Romero*, 480 F.3d at 1246.

"[T]he judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it). He may not rubber stamp a stipulation to seal the record." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (citations omitted).

The parties' submitted billing records do not fall within discovery and therefore the public access to courts analysis is triggered. Further, the parties request that their billing record documents be sealed because they are protected by attorney-client privilege and the work product doctrine. However, "it is the law of this circuit that information involving receipt of attorneys' fees from a client is not generally privileged." *Estate of O'Neal v. United States*, 258 F.3d 1265, 1276 (11th Cir. 2001) (citing *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982)); *see also FTC v. Cambridge Exch.*, 845 F. Supp. 872, 874 (S.D. Fla. 1993) ("The general rule is that the identity of a client or recipient of fees from a client are not normally within the attorney-client privilege. [. . .] [B]illing records . . . which do not reveal client communications are not protected by the attorney-client privilege."). Conversely, "there is support for recognizing privilege in billing records" to the extent that the billing records reveal more than client identity and fee information. *United States v. Baker*, Civ. Act. No. 407CR281, 2008 U.S. Dist. LEXIS 93054, at * 3, 2008 WL 4921262 (S.D. Ga. Nov. 17, 2008).

In this case, many of the billing records submitted include narratives explaining how the time was spent. Many of these narratives include discussions with clients and strategy for pursuing and defending the claims. Thus, they reveal more than just "client identity and fee information" and the Court finds the balance of public access to courts compared with the privileged information

contained in the billing records weighs in favor of sealing the billing records. Accordingly, the motions to seal (Docs. 139, 143) are due to be **GRANTED**.

### IV.   CONCLUSION

Based on the above, the Court **ORDERS** as follows:

(1) Shark Tech's motion for attorney's fees (Doc. 141) is **GRANTED**. The Court awards attorneys' fees in the amount of **$19,436.15**.

(2) The Gagnon's motion for attorney's fees (Doc. 135, 144) is **DENIED**.

(3) The motions to seal (Docs. 139, 143) are **GRANTED**. The Clerk of Court is **DIRECTED** to seal Exhibits A and B that are attached to Document 144 on the docket sheet.[4]

Final judgment shall issue in accordance with Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this the 14th day of March 2024.

          s/Terry F. Moorer  
          TERRY F. MOORER  
          UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that the documents were filed openly without seal by Gagnons' counsel despite the request to seal. However, as the Court finds that they do contain some privileged discussions with the client, the Court will now seal them.